UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-15572 |
| HANDY BUTTON MACHINE CO., | ) | Hon. Pamela S. Hollis |
| | ) | Hearing Date: February 1, 2011 |
| | ) | |
| Debtor. | ) | Hearing Time: 10:00 a.m. |
| | ) | |

## NOTICE OF MOTION

TO:  See Attached Service List

PLEASE TAKE NOTICE that on **February 1, 2011 at 10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Pamela S. Hollis, Bankruptcy Judge, in the room usually occupied by her as a Courtroom in the U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, Room 644, or in her absence, before such other Judge who may be sitting in her place and stead and hearing bankruptcy motions, and shall then and there present the **First and Final Fee Application of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC as Counsel to the Debtor for Allowance of Compensation and Reimbursement of Expenses, Limited Notice Thereof and Related Relief**, a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

> Robert M. Fishman (#3124316)
> Peter J. Roberts (#6239025)
> John W. Guzzardo (#6283016)
> Shaw Gussis Fishman Glantz
>   Wolfson & Towbin LLC
> 321 North Clark Street, Suite 800
> Chicago, Illinois 60654
> (312) 541-0151  telephone
> (312) 980-3888  facsimile

{7409 APPL A0277775.DOC}

# CERTIFICATE OF SERVICE

    John Guzzardo, an attorney, certifies that he caused to be served a true copy of the above and foregoing notice and attached pleadings upon the ECF Notice List and E-Mail as indicated herein, on January 7, 2011.

                                                            /s/ *John Guzzardo*

## *Mailing Information for Case 10-15572*

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notices for this case.

- R Scott Alsterda    rsalsterda@uhlaw.com
- Andrew A Boros    aaboros@kopkalaw.com
- Lee F Dewald    ldewald@riebandtanddewald.com
- Yeny Estrada    estrada@wildman.com, connor@wildman.com;ecf-filings@wildman.com
- Robert M Fishman    rfishman@shawgussis.com
- James G Froberg    jgfroberg@lowis-gellen.com, tpeckham@lowis-gellen.com,jdarfler@lowis-gellen.com,jgfroberg@hotmail.com
- John W Guzzardo    jguzzardo@shawgussis.com
- William T Neary    USTPRegion11.ES.ECF@usdoj.gov
- Peter J Roberts    proberts@shawgussis.com
- Jennifer M Tontz    tontz.jennifer@pbgc.gov, efile@pbgc.gov
- Justin Volmert    volmertj@jbltd.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 10-15572 |
| HANDY BUTTON MACHINE CO., | ) | Hon. Pamela S. Hollis |
| | ) | Hearing Date: February 1, 2011 |
| | ) | |
| Debtor. | ) | Hearing Time: 10:00 a.m. |

### FINAL APPLICATION OF SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN LLC, AS COUNSEL FOR THE DEBTOR, FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AND FOR RELATED RELIEF

Robert M. Fishman and the law firm of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC ("**Shaw Gussis**") applies to this Court, pursuant to Sections 330 and 331 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002(a)(6), 2002(i), 2016(a) and 9007, for the allowance and payment of $248,282.00 in compensation for professional services rendered on behalf of Handy Button Machine Co. and for the reimbursement of $8,693.94 for expenses incurred during this Chapter 11 case. In support of this "Final Fee Application," Shaw Gussis respectfully states as follows:

### BACKGROUND

1.    On April 8, 2010 ("**Petition Date**"), Handy Button Machine Co. (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), thereby commencing the above-entitled Chapter 11 case (the "**Case**"). During the entirety of the Case, the Debtor remained in possession of its assets and continued to

operate its business as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

3. The Debtor is a privately held Delaware corporation with its principal place of business located in Wheeling, Illinois. The Debtor is in the business of selling furniture and furniture components.

## RETENTION OF SHAW GUSSIS

4. On May 11, 2010, the Debtor applied to the Court for an order approving its retention of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC ("**Shaw Gussis**") as general bankruptcy counsel in connection with the Case and the compensation arrangement related thereto (the "**Retention Application**"). On or about May 11, 2010, the Court signed an order authorizing the Debtor to employ Shaw Gussis as its general bankruptcy counsel in connection with the Case (the "**Retention Order**").

## GENERAL STATUS OF THE CASE

5. From the inception of the Case, the Debtor's goal was to confirm a traditional, non-sale plan of reorganization. The Debtor had a healthy business with a positive cash flow. However, the Debtor was burdened with a substantial liability on account of significantly underfunded defined benefit plans. Terminating these pension plans and dealing with the underfunding liability were the keys to proposing and confirming a Chapter 11 plan. From the Petition Date, the Debtor administered its estate (the "**Estate**") as debtor in possession with these goals in mind.

6. There were three major items that needed to be successfully addressed in order to put the Case in a position for a plan of reorganization (the "**Plan**") to be confirmed. First of all, the Debtor need to monetize its interest in Preferred Furniture Corporation ("**PFC**"), the Debtor's 50% own subsidiary in North Carolina[1]. Secondly, the Debtor needed to come to a resolution with the Pension Benefit Guarantee Corporation ("**PBGC**") respecting the termination of its two pension plans (the "**Pension Plans**") and the treatment of the claims related to the Pension Plans and the termination thereof. Lastly, the Debtor needed to come to terms with Bank of America ("**BofA**"), its principal secured creditor, on the terms of repayment of BofA's secured claims under the Plan.

7. It was important to first address the PFC situation, because the disposition of the PFC stock (the "**PFC Stock**") was the vehicle to create the cash necessary to fund many of the payments to be proposed under the Debtor's Plan. Prior to the Petition Date, the Debtor had negotiated an agreement for the redemption of the PFC Stock by PFC (the "**Redemption Agreement**") with the owners of the other 50% interest in PFC (the "**Other Stockholders**"). However, upon the filing of the Case, new and unexpected issues were raised by counsel for the Other Stockholders and complexities developed. After extensive additional negotiations, on or about May 21, 2010 the Debtor filed its Motion Debtor's Motion for the Entry of an Order Authorizing the Sale of the Debtor's Common Stock of Preferred Furniture Corporation Free and Clear of Liens, Claims and Interests and for Related Relief (the "**Sale Motion**"). On or about June 3, 2010, the Court conducted a hearing on the Sale Motion and entered an order granting the same. Finally, in early July 2010, the sale (redemption) of the PFC Stock was completed, and in excess of $2,100,000 of proceeds were generated for the benefit of the Estate.

---

[1] The Debtor was not involved in the management of PFC. It was merely a 50% shareholder.

8. Simultaneously with working on the sale of the PFC Stock, the Debtor was engaged in the process of submitting information to PBCG for purposes of terminating the Pension Plans and determining the claims attendant thereto. Over the course of time, the Debtor provided PBGC with (a) all of the pertinent historical financial information it required, and (b) projections for each of the several possible scenarios that demonstrated that termination of the Pension Plans was necessary to the survival of the business enterprise.

9. Lastly, the Debtor needed to negotiate plan treatment with BofA. BofA was a substantially over-secured creditor, but it did not want to remain in the credit. The Debtor needed to balance the repayment terms for BofA with the requirements of servicing the obligations under the Plan to the unsecured creditors (principally PBGC). BofA and the Debtor meticulously negotiated detailed terms of the BofA treatment, both before and after the Plan was filed, until ultimately reaching an acceptable arrangement that allowed BofA to vote for acceptance of the Plan.

10. On August 11, 2010, the Debtor filed its Plan and accompanying disclosure statement. On October 27, 2010, this Court entered an order confirming the Plan. The effective date of the Plan ("**Effective Date**") was November 12, 2010.

### THE SERVICES RENDERED BY SHAW GUSSIS GENERALLY

11. From and after the inception of Shaw Gussis' representation of the Debtor up to and including the Effective Date (the "**Application Period**"), Shaw Gussis has served as legal counsel to the Debtor with respect to all bankruptcy matters that have arisen in or with respect to the Case. In connection therewith, Shaw Gussis has provided substantial bankruptcy legal services to the Debtor (the "**Services**"), including analysis of the Debtor's assets and liabilities, advising the Debtor with respect to its rights and obligations under chapter 11 of the Bankruptcy Code, drafting and presenting motions to this Court, participating in the negotiation and drafting

of multiple financing orders and settlements, assisting the Debtor in selling certain of the its assets, and advising the Debtor with respect to numerous business issues that have presented themselves during the Case.

12. In an effort to provide the Court and parties in interest with understandable information concerning the amount and nature of the Services provided by Shaw Gussis to the Debtor during the Application Period, Shaw Gussis has attached a detailed statement of the Services rendered to the Debtor (See <u>Exhibit A</u>). Within <u>Exhibit A</u>, the Services are divided by distinct matters.

13. All of the Services for which compensation is requested were rendered in connection with the Case and related matters. All of the time described in the Exhibit A represents the actual amount of time spent or, in certain instances, less than the actual amount of time spent by the professionals of Shaw Gussis who rendered the described services. In certain instances, the time reflected in the exhibit has been reduced in an effort by Shaw Gussis to eliminate excessive, duplicative or, in hindsight, unnecessary or unproductive services.

14. The Services consist generally of services in the following categories:

    A. <u>Litigation and Contested Matters</u>. Shaw Gussis appeared in this Court on behalf of the Debtor on multiple occasions and argued before the Court and/or filed pleadings respecting (i) the Debtor's request for authorization to use cash collateral; (ii) authorization for the Debtor to hire and/or compensate various professionals; (iii) the sale of the PFC Stock; and (iv) the Debtor's motion to terminate the Pension Plans.

    B. <u>Advising the Debtor</u>. Shaw Gussis met with the Debtor and the Debtor's other professionals on numerous occasions for purposes of advising the Debtor of the status of matters being presented to the Court, consideration of requests for relief by the Debtor and

others, consideration of strategic and legal options that the Debtor might pursue, and determining the required and/or advisable courses of action for the Debtor to pursue on various matters. Shaw Gussis met in person with the management of the Debtor to review the status of the Debtor's operations, the status of sale efforts, projections respecting various plan scenarios, and general case administration, and then met with various other parties to discuss the same. Shaw Gussis advised the Debtor on its various legal and practical options, the timing of any such actions to be undertaken, the likely results of the same and the potential benefits or detriments to the Estate from such contemplated actions.

C. <u>Negotiating With Parties</u>. Shaw Gussis met with and/or spoke to representatives of PBGC, PFC and BofA and/or their respective counsel, on numerous occasions to discuss the status of the Case, the status and logistics of the various motions presented to the Court, the terms of the Plan, and the general conduct of the Case.

D. <u>Research and Investigation</u>. Shaw Gussis spent time reviewing books, records, contracts and other documents with regard to the business activities and transactions of the Debtor, and discussing and reviewing the same with the Debtor.

15. The hourly rates charged by the bankruptcy professionals of Shaw Gussis who worked on the Case and whose time is a part of the Services are as follows:

| **Members** | **Rate** |
|---|---|
| Robert M. Fishman | $600.00 |
| Peter J. Roberts | $450.00 |
| Allen J. Guon | $380.00 |
| Terry G. Banich | $380.00 |

| **Associates** | **Rate** |
|---|---|
| John W. Guzzardo | $290.00 |
| Kimberly A. Bacher | $290.00 |

| **Paralegals** | **Rate** |
|---|---|
| Patricia M. Fredericks | $180.00 |

                Melissa A. Westbrook      $180.00

These rates are based on the experience and expertise of the respective personnel.

      16.    The Services have required a total of 585.40 hours on the part of Shaw Gussis as more fully set forth in the attached Exhibit A. Based upon the customary and reasonable rates charged by Shaw Gussis for services in cases under the Bankruptcy Code and for services other than services rendered in cases under the Bankruptcy Code, the fair and reasonable value of the Services is not less than $248,282.00 (the "**Compensation Request**"). All of the Services for which compensation is requested were Services which, in Shaw Gussis' billing judgment, were necessarily rendered after due consideration of the expected cost and anticipated benefit of such Services.

      17.    Hereinbelow, the Court will find a narrative, by category, of the Services provided by Shaw Gussis to the Debtor (the "**Summaries**"). Within Exhibit A, the Court will find the Services broken down by date, attorney and category. Additionally, each of the categories within Exhibit A and the Summaries has a compilation of the time spent on and compensation requested for each category.

      18.    The following are the Summaries:[2]

          A.    **Business Issues**. ($405.00 – 0.70 hours)

          B.    **Case Administration**. ($22,430.00 – 65.20 hours) This subject matter includes Services pertaining to general case administration, including but not limited to, preparation for and participation in hearings, meetings, telephone conferences and other activities where multiple subject matters were discussed, analyzed, or otherwise acted upon.

---

[2] The narrative is provided for all categories of Services for which at least $2,000 of compensation is requested. Exhibit A contains a detailed description of all Services, by category, regardless of the amount requested.

Specifically, this category of Services includes: (i) conducting general case management; (ii) preparing and filing of monthly operating reports; (iii) finalization and presentation of various first day motions; (iv) preparation of and presentation of various motions of the Debtor to retain professionals; and (v) preparing for and participating in discussions with the Debtor regarding the continued administration of the Case.

        C.     **Cash Collateral/DIP Financing**. ($17,338.00 – 37.10 hours) This subject matter includes Services pertaining to the Debtor's use of cash collateral, including but not limited to negotiation of periodic extensions of the consensual use of cash collateral, preparation and presentation of motions and orders respecting the same, and advising the Debtor about budgeting and spending issues. Specifically, this category of Services includes: (i) negotiating extensions of the cash collateral agreement with BofA; (ii) communicating with the Debtor and BofA regarding budget and funding issues; and (iii) and participating in interim and final hearings respecting the use of cash collateral.

        D.     **Creditors and Claims**. ($9,276.00 – 25.50 hours) This subject matter includes Services rendered in connection with general creditor issues and disputes, including communications and correspondence with individual creditors regarding, *inter alia*, claims and status of the Case. Specifically, this category of Services includes: (i) analyzing and communicating with the Debtor regarding filed proofs of claim; (ii) advising the Debtor regarding treatment of claims; (iii) reviewing and responding to reclamation and/or Section 503(b)(9) notices and inquiries; and (iv) responding to various creditors inquiries regarding the treatment of their claims and the Case generally.

        E.     **Disclosure Statement.** ($21,555.00 – 47.90 hours) This subject matter includes Services rendered in connection with the preparation of the Debtor's disclosure

statements. Specifically, this category of Services includes: (i) analyzing relevant documents and records, and drafting the disclosure statement; (ii) communicating with the Debtor regarding various historic information, current data and further financial projections for inclusion in the disclosure statement; (iii) reviewing and responding to BofA Objection to the disclosure statement; and (iv) attending the hearing respecting approval of the disclosure statement.

F. **Employee Issues**. ($585.00 - 1.20 hours)

G. **Fee Applications**. ($3,569.00 – 6.00 hours) This subject matter includes Services rendered in connection with the preparation and filing of the Final Fee Application. Specifically, this category of Services includes: (i) preparing and reviewing the Detailed Statement of Services Rendered; and (ii) preparing, filing, and serving the Final Fee Application.

H. **IP Claims**. ($2,340.00 – 5.00 hours) This subject matter includes Services rendered in connection with intellectual property ("**IP**") issues. Specifically, this category of Services includes: (i) communicating with counsel for certain parties claiming that the Debtor violated said parties' IP rights; and (ii) communicating with the management of the Debtor and co-counsel respecting termination of the alleged acts and appropriate response to IP violation claims.

I. **Pension Issues**. ($39,406.00 – 87.20 hours) This subject matter includes Services rendered in connection with issues respecting termination of the Pension Plans. Specifically, this category of Services includes: (i) researching, drafting, filing and presenting a motion to terminate the Pension Plans, including affidavits in support thereof; (ii) communicating with the management of the Debtor and co-counsel respecting facts and circumstances in support of the motion to terminate the Pension Plans; and (iii) discussing termination issues and facts with representatives of PBGC.

J. **PFC Matters**. ($23,879.00 - 52.60 hours)  This subject matter includes Services rendered in connection with issues respecting the Redemption Agreement and the PFC Stock. Specifically, this category of Services includes: (i) drafting and presenting the Sale Motion; (ii) engaging in substantial and prolonged negotiations with counsel for the Other Shareholders and co-counsel to resolve the new issues raised by said counsel; and (iii) advising the Debtor with respect to its rights under the Redemption Agreement and its choices in the event that the Other Shareholders did not perform under the Redemption Agreement.

K. **Plan of Reorganization**. ($95,207.00 – 212.10 hours)  This subject matter includes Services rendered in connection with formulation, negotiation and drafting of the Plan. Specifically, this category of Services includes: (i) conferring and negotiating with PBGC and BofA regarding the terms of the Plan and the order of confirmation; (ii) consulting with the Debtor regarding the requirements for plan confirmation, the application of those requirements to the Case and the Plan and the chapter 11 plan solicitation and approval process; (iii) drafting and presenting the Plan, including the affidavit in support thereof; (iv) analyzing and responding to the Objection of BofA.

L. **Pre-Petition Litigation**. ($945.00 – 2.10 hours)

M. **Statement and Schedules**. ($8,968.00 – 36.80 hours)  This subject matter includes Services rendered in connection with filling out the Schedules of Assets and Liabilities and the Statement of Financial Affairs of the Debtor (collectively, the "**Statements and Schedules**"). Specifically, this category of Services includes: (i) reviewing and revising the draft answers to the Statements and Schedules provided by the Debtor; (ii) consulting with the management of the Debtor respecting the appropriate answers to the questions in the Statements

and Schedules; (iii) working with the Debtor to prepare and filed Amended Schedules of Assets and Liabilities.

      N.    **Unexpired Leases**. ($1,597.00 – 3.80 hours)

      O.    **Utility Issues**. ($782.00 - 2.20 hours)

## SUMMARY OF SERVICES RENDERED BY PROFESSIONAL

19. In summary, the lodestar amount of compensation sought with respect to the Services is $248,282.00 (the "**Lodestar Amount**"). In addition, the total compensation sought for each professional with respect to the aforementioned categories as set forth in Exhibit A can be summarized as follows:

### PROFESSIONAL RATE CHARTS

| Professional | Position | Rate | Hours | Amount |
|---|---|---|---|---|
| Robert M. Fishman | Member | $600.00 | 55.80 | $33,480.00 |
| Peter J. Roberts | Member | $450.00 | 413.90 | $186,255.00 |
| Allen J. Guon | Member | $380.00 | 1.60 | $608.00 |
| Terry G. Banich | Member | $380.00 | 4.50 | $1,710.00 |
| John W. Guzzardo | Associate | $290.00 | 54.20 | $15,718.00 |
| Kimberly A. Bacher | Associate | $290.00 | 4.90 | $1,421.00 |
| Patricia M. Fredericks | Paralegal | $180.00 | 0.90 | $162.00 |
| Melissa A. Westbrook | Paralegal | $180.00 | 49.60 | $8,928.00 |
|  |  | **Total:** | **585.40** | **$248,282.00** |

20. The hourly rates charged by Shaw Gussis with respect to the Case compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise as the Shaw Gussis attorneys and paralegals providing services to the Debtor in connection with the Case. Further, the amount of time spent by Shaw Gussis with respect to the Case is reasonable given the difficulty of the issues presented, the time constraints imposed by the circumstances, the amounts at stake and the sophistication and experience of opposing counsel.

21. The Lodestar Amount for all of the services rendered by Shaw Gussis during the Application Period is $248,282.00. Given the criteria set forth in Section 330 of the Bankruptcy Code, namely (i) the nature, extent and value of the services, (ii) the time spent, (iii) the rates charged for such services, (iv) the performance of the services within a reasonable amount of time commensurate with the complexity, importance and the nature of the problem, issue or task addressed, and (v) the reasonableness of the services based on the compensation charged by comparably skilled practitioners in other bankruptcy and non-bankruptcy matters, Shaw Gussis respectfully submits that the Lodestar Amount represents a fair and reasonable amount for the allowance of compensation in this Case.

## THE EXPENSES REQUESTED

22. All of the Expenses for which reimbursement is requested are expenses which Shaw Gussis customarily recoups from all of its clients. The types of costs for which reimbursement is sought are listed below:

| Internal Photocopy | 10¢ per page |
|---|---|
| Commercial/Court Photocopy | actual cost |
| Commercial Messenger | actual cost |
| Long Distance Telephone | actual cost |
| Local Telephone | no charge |
| Outgoing Facsimiles | no charge |
| Incoming Facsimiles | no charge |
| On Line Legal or Factual Research (Westlaw/Lexis/Pacer) | actual cost |
| Postage | actual cost |
| Overnight Delivery (*e.g.*, Federal Express) | actual cost |
| Filing/Recording Fees | actual cost |
| Deposition Costs | actual cost |
| Local and Long Distance Travel | actual cost |

23. The specific Expenses for which reimbursement is requested during the Application Period are as follows:

{7409 APPL A0277775.DOC}

14

| Internal Photocopy | $1,057.20 |
| --- | --- |
| External Copy Service | $2,589.54 |
| Commercial Messenger | $16.32 |
| On Line Legal or Factual Research (Westlaw/Lexis/Pacer) | $542.25 |
| Postage | $1,054.74 |
| Overnight Delivery (*e.g.*, Federal Express) | $2,056.34 |
| Teleconference Calls | $37.55 |
| Clerk of the Court (Filing Fees) | $1,215.00 |
| Parking/Local travel/Working Lunch | $125.00 |
| **TOTAL:** | **$8,693.94** |

24. All of the Expenses for which reimbursement is sought are costs actually borne by Shaw Gussis and were necessarily incurred in connection with this case. As noted previously, all of the Expenses for which reimbursement is requested are of the type and amount of expense that Shaw Gussis customarily recoups from all of Shaw Gussis' clients. Further, the expenses for which reimbursement is sought constitute the types and amounts generally allowed by bankruptcy judges in this and other districts. Annexed hereto as Exhibit A is an itemization for all Expenses for which reimbursement is sought through this Application.

**COMPENSATION AND EXPENSES RECEIVED TO DATE BY SHAW GUSSIS**

25. As disclosed in the Retention Application, Shaw Gussis received $180,000.00 as a retainer from the Debtor prior to the Petition Date, of which $148,592.78 remained unapplied as of the Petition Date (the "**Retainer**").

**COMPLIANCE WITH SECTION 504**

26. Other than as provided for and allowed by Section 504 of the Bankruptcy Code, there is no agreement between Shaw Gussis and any other firm, person or entity for the sharing or division of any compensation paid or payable to Shaw Gussis.

## NOTICE

27. Notice of this Application has been provided to the Office of the United States Trustee and all parties requesting notice. Based on the extent of the notice already provided, Shaw Gussis respectfully requests that additional notice of the hearing on this Application be excused for good cause shown pursuant to Fed. R. Bankr. P. 2006(a)(6), 2002(i) and 9007.

WHEREFORE, Shaw Gussis requests the entry of an order, substantially in the form attached hereto that:

(a) allows Shaw Gussis $248,282.00 in compensation for Services rendered during the Application Period (the "Allowed Fees");

(b) allows Shaw Gussis $8,693.94 in Expense reimbursement for the Application Period (the "Allowed Expenses");

(c) authorizes and directs the Debtor to pay Shaw Gussis the Allowed Fees plus the Allowed Expenses less the Retainer, or $108,383.16;

(d) waives other and further notice of this hearing with respect to this Application; and

(e) provides Shaw Gussis with such additional relief as may be appropriate under the circumstances.

Respectfully submitted,

Shaw Gussis Fishman Glantz Wolfson & Towbin LLC

Dated: January 7, 2011

By: /s/ John Guzzardo
One of its attorneys

Robert M. Fishman
Peter J. Roberts
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151  telephone
*Counsel for Handy Button Machine Co.*

{7409 APPL A0277775.DOC}